Good morning. Illinois Appellate Court, First District Court is now in session. The Second Division, the Honorable Justice Nathaniel House presiding, case number 21-0575, Project44, Inc. v. FourKites, Inc. Good morning. This case is being heard via Zoom due to the COVID crisis. My name is Nathaniel House and presiding over this case with me are Justices David Ellis and Justice Cynthia Cobbs. We're going to proceed as follows today. We're going to allow each side to have 10 minutes of basically uninterrupted presentation in turn, beginning with the appellant. And after the appellant's presentation, we may have questions. Then the appellee will be allowed to present his 10 minutes of argument, and we may have questions after that. And following that, we'll give the appellant a brief time for rebuttal. I'll let you know when you got about two minutes left. With that, who is presenting for the appellant? Would you please state your name? Yes. Good morning, Your Honor. My name is Peter Hawkins. I'm presenting on behalf of Plaintiff Appellant, Project44, Inc. All right. And who's representing the appellee today? I am, Your Honor. I'm Scott Gilbert on behalf of the appellee, FourKites, Inc. All right. Mr. Hawkins, Mr. Gilbert, do you have any questions about how we're going to proceed today? No, Your Honor. Okay. Very well then, Mr. Hawkins, you may proceed when you're ready. I'll let you know when you got two minutes left. Thank you. Thank you. Good morning, and may it please the court. My name is Peter Hawkins, and I represent Plaintiff Appellant, Project44, Inc. The circuit court committed reversible error when it made the unprecedented decision that defamatory statements about a company made to that company's officers and directors are, without exception, not published. This conflicts with this court's holding in Popco v. Continental Casualty Company, which refused such a absolute privilege and instead confirmed Illinois' policy of not confusing the matters of publication with what is more adequately addressed by the doctrine of qualified privilege. The circuit court's error is made even clearer when Popco is applied to the United States Second Circuit Court of Appeals decision, Sleepy's LLC v. Select Comfort Corp. There, the appellate court found published defamatory statements about a company made to that company's management. This morning, I will discuss why Defendant Appellee ForKites has failed to articulate any legitimate concern should the should not be followed by this court. ForKites has never denied its involvement in the sending of statements to Project44 outside directors Jim Baum and Kevin Dietzel, where an anonymous sender using a fictitious name accused Project44 of, among other things, feeding the next Theranos that, of course, is the company that collapsed due to the notorious fraud scandal, as well as having ties to organized crime. Additionally, ForKites has never contested its involvement in the sending of statements to Project44 Chief Revenue Officer Tim Bertrand, where, again, an anonymous sender using a fictitious name accused Project44 of being the next Theranos, as well as a Ponzi scheme, and encouraged Mr. Bertrand to resign from the company. We know from pre-suit discovery that there are other unknown actors involved in the sending of communications. Yet, if the Circuit Court is affirmed, not only will Project44 be unable to bring a claim for defamation per se against ForKites, it will also not be able to determine who else was involved in the sending of these communications, and who else may have received the communications. The Circuit Court was clear that the complaint filed by Project44 was otherwise well-based, and it should be allowed to run that claim through the trial court. Now, the issue before the court today, there's no consensus nationwide as to this issue of publication, but we know 40 years ago, our sister federal courts in Jones v. Britt Airways had this to say about Illinoisan publication, quote, slander and libel cases rarely concern the issue of publication because communication to any third party satisfies the Illinois publication requirement. Only a qualified privilege can render such statements protected, end quote. Paco confirms that this remains true, and we can surmise from these cases that Illinois errs on the side of finding publication, but that's not what happened here. The Circuit Court engaged in a fiction, and it held that Project44, Jim Baum, Kevin Dietzel, and Tim Bertrand were all one and the same for publication purposes. These are not faceless cogs in a machine. They are individuals. They have individual perceptions of Project44, and those perceptions can be damaged. Illinois law is clear that where communications such as these are defamatory per se, damages are presumed. So it's for these reasons, those I will discuss further this morning, and those in our briefs, that we respectfully request that the dismissal of Project44's complaint by the Circuit Court be reversed, and that this case be remanded back to the Circuit Court for further proceedings. Just looking at the Popco and Sleepy's cases, it is clear that the Circuit Court erred. Popco, of course, dealt with intra-corporate communication statements that were made by a supervisor that defamed an employee, were then communicated to other managers and executives at that company, put another way, the communication was communicated towards agents of the defendant, and the defendant in that case argued that the company was just speaking to itself, yet this court rejected that argument. It held instead that that would create an absolute privilege, quote unquote, or an absolute bar against actions for defamatory statements, and so holding the joined a line of Illinois cases that looked to the restatement of torts for guidance on matters of publication, and the restatement is clear that there is no distinction on whether the recipient is an employee or their title or position in the company. It simply states that communications made to the agent of the defamed may be published. Popco also confirmed what the court in Jones v. Britt Airways had observed decades prior, that Illinois has a policy of avoiding confusing issues of publication with what can better be resolved by qualified privilege, and to that end, when the defendant in that case complained that a finding of publication would chill corporate speech, this court rejected that argument, instead holding that the idea, this concept of qualified privilege adequately protected the defendant's concerns. Now, Forkites' principal criticism of the Popco case is that it doesn't fit squarely with the facts of this case, but that's a red herring. Both the cases cited by Project 44, as well as those cited by Forkites on the issue of communications made to agent of the defamed, draw analogies to such corporate communications. Forkites has simply failed to offer a reasoned basis, other than a desire to avoid liability for what it plainly did, for this court to abandon Popco. The communications at issue here were not a legitimate criticism, but even if they were, they are adequately protected by the concept of qualified privilege. Now, while admittedly the facts of Popco are not one-to-one with the facts of this case, the Sleepy's case comes remarkably close. There, a lower court dismissed a claim for defamation per se, where defamatory statements about a company were made to that company's employees, and we know from the lower court opinion that those employees had management positions in the company, yet the circuit court, pardon me, the appellate court, didn't even mention that distinction, because what it felt was important, what it found was the key principle was that which was set forth in the restatement, as recited in the 60-year-old case Teichner v. Bellin from the New York appellate court, again, that statements made to the agent of the defamed may be published. That was what was the position or title of the recipients of those communications, and despite its age, Teichner provides a blueprint for how this court can review the issue before today and why the circuit court decision should be reversed. Teichner, like this case, involved communications made to the agent of the defamed. Just like this case, it was a matter of first impression in front of the New York appellate court, and the way that the court resolved that issue is by looking to the appellate court, as well as to looking towards the intracorporate case, a case law that dealt with statements made to agents of the defendant. Two minutes. Thank you, Your Honor. Just like the Popko case. So these cases provide the blueprint upon which this court can decide this issue and why this decision by the circuit court should be reversed. It presents a balanced approach, accommodating for both the concerns of the plaintiffs, as well as the defendants. With all due respect to Forkites, its position focuses on the extremes. It contends that there can never be a reputation between a corporate plaintiff and its officers and executives. That reversal of the circuit court would eliminate the publication requirement in Illinois, and that out-of-state case law overrides that of Illinois. I've already discussed that first point. It fails to really reconcile itself with common sense. We know, for instance, that Tim Bertrand had recently been hired by Project 44. In being hired by the company, we can presume that one of the things that he considered was the company's reputation. That didn't disappear the moment he set foot on Project 44. Similarly, this concern about the elimination of the corporate publication requirements completely ignores Popko's commentary on the role of qualified privilege and how it serves as the backstop to prevent cases from quote-unquote slingshotting to damages, just like defendant Apelli complains here. Finally, turning to the out-of-state cases cited by Forkites, I won't discuss them in detail. The key consideration there, though, is that you trace the lineage of those cases, they all go back to the District of Utah case in Fawcett v. American Resource Management. That case's central thesis, that there can never be a reputation to be damaged between management and a company, is entirely unprecedented. All that the court can say is that it was quote-unquote impliedly recognized by the Fifth Circuit in Diplomat Electric v. Westinghouse, but respectfully, a plain reading of that case just does not support that statement. But even if it was rock solid, it just represents one camp in a ongoing debate regarding this issue of publication. And we know from Popko that Illinois has no qualms refusing to follow decisions from other states that it finds are not well-reasoned, and it should have no concern refusing to follow the Utah and Florida decisions in this case. So it's for these reasons, as well as those in our briefs, that we respectfully request that the circuit court's decision be reversed. I thank the court for its time, and I'm happy to answer any questions that they have. Thank you, Mr. Hawkins. We have questions. Hi. So first of all, thank you, Justice House. First of all, I'm sorry that I don't have a courtroom background. I've had some technical problems, and I'm using my phone. So you see whatever is behind me here in my back room of my house. So I apologize for that. Mr. Hawkins, first of all, thank you for your presentation. And I want to tell both of you that I thought your briefs were excellent. So we appreciate when we get good briefs. We don't always get them. We is that there is going to be a floodgate of lawsuits. I know you argue that privilege is the way to deal with this. But any time that I think one of the things Fork Heights would say is any time somebody makes a complaint, even to the complaint department, right, about a company, maybe you would call it invited, and invited communication, there could be a defamation lawsuit that that somebody would have to litigate. Thank you, Your Honor. And the restatement actually addresses that specific issue that you just raised up this so called invited communication. Our contention this morning is that the this court should follow the restatement. And their statement says that communications may be published, not that they are always published example that they provide is just what Justice Ellis had discussed here, which is the invited communication. The cases hold that it's either not actionable or simply not published. And so that addresses the concern of, for instance, a communication made to a complaint line somehow giving rise to a defamation claim that would not be even under the restatements more permissive approach would not be considered actionable for a claim of defamation per se. But why? On what basis? The basis there is that the restatement, there is a long standing body of law on the issue of invited communications on communication. Sure, but but that's is that privilege or publication? That is, these restatement would say it is publication, but not actionable. And Your Honor, you bring up a very interesting point, because there is some not lack of clarity in the case law as to whether it's simply not actionable, or it's not published. The Capo Grasso case, for instance, upon which for kites relies, said that it was not published. I think our position this morning would be that in either circumstance, whether it's published or not the communications here would not fall under that exception, and therefore that it was wrong for the circuit court to dismiss our complaint. Okay, so it just it doesn't, it's not very satisfying to me to hear you say it's not actionable that you have to tell me why it's not actually. So if I know there's, there's an argument here that the the the communication was invited by, well, in any event, there's an if we have an invited communication, what would be the basis for for it not being actionable? Would it be not published? Or would it be privileged? It would be not published under the Capo Grasso case, I would take that position that it's not published, because it is being asked to, you're almost dragging the person into making that communication, you're setting them up, I think is one way one of the cases described it. So there, you're asking for, you're prompting the person to make that statement. It's not necessarily something that's coming of their own volition. It's being in response to a, an inquisition, a query. And so in that instance, you would not face the issue of publication, which would otherwise find an unprompted statement that is that comes up freely from the person who is communicating that, that that statement or phrase. Okay. All right. Okay. Thank you very much. Thank you. Is there any basis to distinguish between agent and employee, and a director who directing policy for corporation? Our position is no, your honor. Each person has their own perception about the company. And I think it goes too far to say that even at a director level, even at a policymaker level, that no reputation exists, that there's a fiction there. Each individual person, regardless of their position in the company, has a perception of the company for what they're working for, for whom they are working for. And it goes too far to say that that reputation can never be damaged. It can be, regardless of the person's position, regardless of their role in the company. All right. I have no further questions. I'll make a note at this point, Justice Cobb had an equipment failure. We had, the court had installed some new routers last week, and they're not working right. And her comped out. So she will listen to the argument after the, on tape. Mr. Gilbert, you may proceed when you're ready. Thank you. May it please the court. My name is Scott Gilbert and I represent the Appali Fourkites Inc. At its base, the tort of defamation protects the value of one's reputation within the community. That is why publication to a third party is required. No matter how hurtful or upsetting a statement may be when it's made to me, if that statement is made solely to me, there is no defamation. That is black letter law in Illinois, where courts have held that the publication requirement is not satisfied when the communication is made to the person defamed. No one has challenged in this litigation that the publication rule does not apply, even in cases like this one involving a corporate plaintiff. And this Justice Ellis goes to your point about the distinction between publication and privilege. And I would say the Capograsso case does not hold that it wasn't that somehow the privilege made it not published. They held in that case that the invitation made the individual one in the same as the corporation. And there, that was the basis for not published. So what this court is being asked to decide today is who qualifies as a third party for purposes of satisfying the publication requirement in a defamation claim brought by a corporation. Nothing in the case law or any treatise provides that the publication requirement does not apply in this setting. However, that requirement, that fundamental requirement of establishing the cause of action is an empty letter. If communications to the human embodiment of a corporation are deemed a publication, because if so, then any state to a corporation would be published and the rule would have no meaning. So where should the court draw the line? That's really, I think what you're being asked to decide today is where to draw the line. And the answer to that question may become more complicated. The farther down the corporate ladder you go. Fortunately, this case provides the court with a much easier decision. This case involves communications that were sent to the appellant's chief revenue officer and two members of its board of directors. And if members of a corporation C-suite and its board of directors are not the company for purposes of publication, then who is? They are not an outside member of the community. They are the company. And the issue of publication is fairly straightforward when the statement is about an individual, but much more nuanced when the subject of the statement is an entity like the corporate plaintiff in this case. But if we apply the black letter law regarding publication to the facts at issue in this case, it becomes clear that Judge Snyder's conclusion in the decision below was correct. So the starting spot with the black letter law is a statement made to an individual about the individual solely made to the individual. In that case, clearly there's no publication and there's no harm. The same result would follow about a comment made regarding a single member LLC that was made exclusively to that sole member of the LLC. In that case, there's been no publication and the individuals or the LLC's reputation hasn't been harmed in the community. And that same result should follow for a comment made about a corporation to members of the company's executive leadership and members of its board of directors. Eliminating the publication requirement, which appellant's position as just articulated would require is not a reasonable outcome in this case, because doing so would ignore the very issue that the tort is designed to address, reputational harm. And if you look in the restatement as it deals with issues of the intent of the sender and things along those lines or how salacious the comments may be, the restatement does focus on the fact that that's not really relevant to the issue of publication. And there may be other torts out there. There may be other wrongs and ways to seek redress, but defamation isn't one of them. And the reason it isn't is because what the restatement says. So the plaintiff would have us look immediately at comment E and I'm going to get to comment E because we both address it in our briefs. But I think the proper place to start is with comment B. Comment B says that the law of only the interest in publication. Therefore, unless it's published to a third party, there can be no defamation since reputation is the estimation in which one's character is held by his neighbors or associates. Illinois courts have explained the basis for the publication requirement as follows. A statement is defamatory if it harms an individual's reputation by lowering the individual in the eyes of his community or deters the community from associating with them. A company's executive leadership constitutes neither its neighbors nor its associates. And emails to a company's executive leadership do not create a risk of lowering the company's esteem in the eyes of the community. As the appellant has acknowledged, Illinois courts have not spoken directly on this issue, but courts from other jurisdictions have. And they have reached a similar conclusion to the one Judge Schneider reached in the decision below. The company for publication purposes when the plaintiff is a company. And that's an important distinction which I'll circle back to. But the court did articulate this, I think, relatively effectively in the Fawcett case, which was referenced by opposing counsel and is cited in our briefs. In there, the alleged defamation related to actions of the plaintiff's management that were communicated to the company's chief principals. And in holding that there was no publication, the court reasoned that the law of defamation protects against the impinging of one's reputation or causing his alienation from his peers. There simply exists no potential for the company's reputation to be reduced or for the company to be alienated from its managers, customers, shareholders, institutional owners, et cetera, when the defamatory statements are made to its management. In another, I apologize, I would like to address too that in the Fawcett case, the court doesn't ignore comment E as my opposing counsel has argued. In fact, it considered it and decided it didn't apply. And it explained why it didn't apply. It said those cases that have held that communications to servants or agents of the defamed person or corporation constitute publication are inapplicable. These cases discuss the issue of whether statements from one corporate employee to another corporate employee of the same corporation constitute publication. But that's not the issue in Fawcett, which is why it was inapplicable. And it's not the issue here. So if we look at Popco and almost all of the other cases that the plaintiff cites in support of its position, you will see that the plaintiff in those cases is an individual. And it would, of course, be a strange resolution if we were to create a rule that says comments made between two employees of a company about a third employee are somehow privileged and aren't published because the statements were about an individual. Of course, there's the possibility for reputational harm here. No one else is the legal embodiment of that individual. But we are talking about something materially different in kind here. We are talking about who is a company, who represents it, because the alternative in this scenario is that publication no longer becomes a relevant factor. It falls by the wayside entirely if members of the C-suite or board of directors are not members of the control group. And if you look at the Florida cases we cited, in Hock versus Loren, the court reached the same conclusion. There's no publication where a defamatory statement about a plaintiff corporation is made to a managerial employee of the corporation. In an advantaged personnel agency, the court reached the same conclusion. And that court noted, it said, while the ruling may be different, if we're dealing with a lower echelon employee, it must necessarily be different where we're dealing with comments that are made to a corporate executive. And that's the case here. Why? Because those individuals are the company. And that rule makes sense. And it seeks to preserve rather than eviscerate this publication rule. And I would like talk about comment E and also Prosser's statement. So in the briefing, you'll see a discussion about Prosser's statement on this. But I think Prosser draws the same distinction that I'm drawing. So with respect, when the issue is publication with respect to defendants, Prosser notes that it extends to an agent, employee, or officer. But when dealing with publication to a plaintiff, it is limited to the agent or the employee. And Prosser does not the reason that that is is because there's a material difference between those. And if the publication rule is going to mean anything at all, it should mean that members of the C-suite and board of directors are the company for purposes of publication. As I said at the outset of this argument, there may very well be a case farther down the corporate ladder where this court decides to draw a line and say publication has occurred. But I would argue this is not that case. Because if these constitute publications, then there is simply no daylight left between the company and the individuals to whom the communications were made. I would also say in closing that intent is that opposing counsel Robinson is a red herring. Comment B addresses this specifically. I mentioned it at the beginning of my argument. No matter how salacious or malicious the comments may have been, they simply do not impact the issue of publication. And that is stated expressly in comment B. As I mentioned as well, if you look through the plaintiff's cases, almost all of them deal with an individual. The only exception to that is Sleepy's. And in Sleepy's, the Second Circuit dealt with regional and district managers, a case materially different from this case because it's farther, much farther down the ladder. But I would also note that in Sleepy's, the court recognizes that the New York courts, because that was a New York case, do not appear to have addressed whether statements to a plaintiff's agent constitute publication. That issue hadn't been resolved, which is the issue now before this court. So to reach a resolution, it looked at the Titchener case. And in that case from 1959, the issue was, again, an individual plaintiff, which leads you back to that circular logic that plaintiff is arguing here. I would like to say two points in closing. My opposing counsel stated that Forkite's never denied its involvement. We haven't even gotten to that point. I think that is clear from the record. There hasn't been a response to pleading. This was a motion to dismiss. And so I think that's an improper position to take and wholly irrelevant to this argument. Secondly, on the issue of qualified privilege, Justice Ellis, as you pointed out, again, in that issue, I think, and we addressed this in our brief, the issue of privilege and publication should not be confused. It's a wholly different animal altogether if an individual is left fighting over privilege. And that's cold comfort when you get down deep into litigation and spend all the money and time and resources you've spent over comments made essentially to the person where we have now eliminated a fundamental basis for the tort itself, and we've ignored the underlying premise of it. So for those reasons, Your Honors, I would ask that this court uphold Justice Snyder's decision in the opinion below. And I welcome any questions the court may have. Thank you. Justice Cobb is able to rejoin us. Justice Cobb, do you have any questions? I apologize in the first instance for the technical difficulties that precluded my ability to listen to the argument. I will defer and listen to the tape later. No questions. Okay. Thank you, Justice Ellis. Thank you, Justice House. Just a couple. Good morning, Mr. Gilbert. Good morning. Thanks again for a great presentation. And again, for a very fine brief, tough issue. We all know that. Why doesn't a corporation have a reputation within its company walls just as much as it has a reputation to the outside world? Well, Your Honor, I would say that one of the fundamental distinctions here has to be that, as I said, I think this is a case of where to draw that line, right? And at some point, it has to be drawn. Because if we say that every member of that corporation, including its executive leadership, has some individual opinion about the company, then there is no longer a publication requirement as it relates to defamation claims where there is a plaintiff. And so I would say at some point, Your Honor, it's much like an individual. So a comment about me that may be distressing, it may be upsetting, it may cause a lot of soul search, but it doesn't create a basis for a defamation claim because my reputation in the broader community has not been harmed. And I think if I think about a situation where you have a board of directors, and one member of those board of directors says to the others, this company is making a crummy product, and it's ripping off its customers. I think it's absurd to indicate that that member of the board of directors has defamed the company in that scenario. Because all of those individuals who sit on the board of directors and direct its business motives that move the company forward, they are the company for that. And so they may do some soul search, but I don't think you show the risk of reputational harm that's otherwise present for a defamation claim. But that would be unquestionably privileged, right? I mean, you're giving an example that I think would be a motion to dismiss unqualified privilege. You wouldn't even get to summary judgment in a case like that. That would be obviously privileged, right? I think, Your Honor, that example that I've given you would be privileged. I don't know. And I'm not trying to quibble with you, but I really am trying to test what you're saying. I mean, I could give you plenty of hypotheticals. Let's say that your company bottles water and so does mine, and I send an anonymous email to your entire sales staff. Okay, you've got 20 people who sell your water around the Chicago area. I send them an email and I say, your water poisons children. It has arsenic in it, something horrible like that. And what I'm hoping to do is sabotage your company. I want your sales staff to en masse walk off the job, or at least stop working for a while because they suddenly have questions and they say, oh, I don't want to be a part of that. I'm going to go to my upper management. I'm not selling one more bottle until I find out. And the company could certainly be hurt in that situation, right? I mean, hypothetically, that could damage the company because of the damage to its reputation in the eyes of those salespeople. Now, if you disagree with that, you can tell me, but I think what you would say is, but that's not upper management. But why couldn't the same thing be true for upper management? Why couldn't somebody with a C-suite title who would fall into some control group, if we're going to use that, I think you use that phrase. Why couldn't the reputation of the company be harmed in the eyes of somebody who just happens to hold a higher rank? Why does it make sense to draw that distinction? Well, I would say a couple of things. So I don't know if I used the term control group, and if I did, I apologize. I don't want to mix concepts of privilege with concepts of publication. But I know what you mean. I mean, we're all on the same page. You're talking about C-suite people, the top people, sure. So I think part of the answer is in the initial hypothetical you gave, which is, what are the salespeople going to do? They're going to go to upper management. They're going to say, is this true? And upper management is going to say no, because upper management has that information. And I think when you get into the level of the C-suite or the board of directors, they have that information, they're aware of it, and they're the ones making the decisions for the company. They're the ones making decisions about what steps the all that information. And so I think then that that is really the primary distinction, is that these are the ones who are charged to push the company to act as the company. And so the only alternative there, Your Honor, is that there is no publication requirement. And I think that's a much more aggressive position to take when that's a fundamental requirement of establishing the tort. Well, if I gave you a hypothetical where the C-suite people would have the information to say, no, that's not true, that might limit the damage to the company. But what if it was, you know, maybe I just didn't give you a good enough hypothetical. I mean, what if I shot an email to the entire C-suite, we'll just use that as a pedophile. OK, I mean, something awful, something that it wouldn't automatically be known by looking at the corporate books, but saying or, you know, he's he's aligned with the terrorist organization. I don't know, something. I mean, surely I can come up with something that wouldn't be that easily disabused. And and your position would be that that the opinions of upper management of their own company can't ever matter to the company. Isn't that really ultimately what there can't be any harm in that situation? Well, I don't think that there can't be. So a couple of things. So first, the hypotheticals you gave some comments about, for example, the CEO being a pedophile. The CEO would clearly have a claim for defamation in that instance. His individual or her individual reputation has been harmed. But I don't think that's the same as a as a comment to the company itself. Right. And it's not actually a comment about the company. So if anything, it's a quad. And part of the issue is that we're dealing with here is this is a defamation per se claim. So what they're really saying is damages are presumed because of the nature of the comments. That's their allegation. And we should assume reputational harm because publication always occurs. So we're assuming quite a bit. The tort is just sort of a self-fulfilling prophecy at that point. Right. And so I think otherwise you're going to be talking about comments regarding the company that impact the company. And those members of leadership are going to know that. So if you say you're selling a crummy product or you guys are engaging in financial impropriety or whatever the case may be, they have all the data at their fingertips that they don't already know. And my guess is that most of the time, if those are false statements, they're obviously going to say that's not true and they're going to know it. And I think it's not worth the damage it does to the the the legal framework for the tort to eliminate the publication requirement altogether and say, yeah, there isn't one. Because I think there are all kinds of other issues to address. I think what's implicit there, Justice Ellis, in your comment, which is, well, what if there actually is harm? What if something bad has happened? There are other torts that exist where you might be able to seek redress. All of those generally require you to plead and prove actual damages, actual harm, unlike defamation, per se, which allows you just to I think that's particularly relevant. So, in this instance, if the CFO, after hearing all the apparently brand new to the company, so he doesn't have a lot of time invested in the company, doesn't have a lot of relationships, he's brand new. And he gets targeted with this email that says all these negative things about accounting improprieties and the mafia and Theranos, and he leaves. And so he was a, maybe, you know, I'm, I know these facts are not admitted. They're only admitted for pleading. So I'm not saying Fork Heights did any of this, but let's say Fork Heights wanted that guy. Okay, so they, they're trying to, they're trying to steal him from the company. So they send this email. And the CFO who's been there for three days doesn't even know where to put his hat yet. You know, he's brand new. He says, well, screw this. Even if there's a chance that this is true, I don't want to be around. I'm going to go work for Fork Heights instead. Like that's real harm, right? That's real. If we're drawing it in the light most favorable to the plaintiff in this hypothetical, that's corporate sabotage. And that's real harm to the company. And you're saying, well, it wasn't published, so you have no lawsuit. Does that seem like an odd outcome to you? Well, Your Honor, actually, I think what I'm saying is that doesn't get you around the publication issue for purposes of defamation. There certainly may be other causes of action under those facts where there were as a result of the harm that was done. You're going to have some basis for a cause of action under another tort. I don't think it gets you around the publication issue. I think the publication issue serves a very important role in the statutory framework or the legal framework for the tort of defamation. What possible tort do you have? Well, under the hypothetical that you've described, there could be a claim for tortious interference. There could be a claim for fraudulent misrepresentation. There are other torts out there. All of those torts require some sort of actual damage. And so they're a little bit different. But this is a tort that doesn't require actual damage, presumes that the harm has occurred. And now we're talking about creating a framework that presumes that there was reputational harm as well. Yeah. Okay. I see. Okay. All right, Mr. Gilbert. Thank you. All right. I have no further questions. You've covered it thoroughly, Justice. Appreciate it. Mr. Hawkins, you may proceed with a few minutes of rebuttal. Thank you, Your Honor. Just to follow up on a couple of points raised by opposing counsel, this idea that the publication in the corporate context would be eviscerated, would be eliminated if the circuit court decision was affirmed is simply not true. And my conversation with Justice made to its company's complaint line, made to a company email address, there's been no suggestion by either Project 44 or Four Kites that any type of that communication somehow becomes published if the circuit court decision is reversed. Separately, comments e to Section 577 of the restatement is certainly one of the operative provisions here, and it's discussed at length in the parties' briefs. And I would just like to briefly read what the Fawcett case had to say about comment e, quote, likewise, the cases that have held that communications to servants or agents of the defamed person or corporation constitute publication restatement second of torts Section 577, e are inapplicable. These cases discuss the issue of whether statements from one corporate employee to another employee of the same corporation constitute publication. Fawcett is not addressing that provision with the breadth it should have. Both the Sleepy's Court and the Teichner Court understood that that provision was more than just intracorporate communication. It involves also statements made by someone outside of the company to an agent of defamed. And the Sleepy's case, again, stands as a counterpoint to opposing counsel's contention that all of these cases only deal with individuals. Sleepy's did not. It admittedly dealt with management, but that's the basis upon which the case law relies. The Fawcett case was not dealing with C-suite executives and officers. It was directed specifically towards management. What Fort Kites is advocating for here is completely unprecedented and not even supported by the cases upon which it cites. Again, affirming the circuit court here will confer an absolute privilege to communications made such as these. There is no off-ramp. There's nothing that my client can overcome if the circuit court decision is affirmed. So it's, again, for these briefs that we respectfully request that the circuit court decision be reversed and this case be remanded. Thank you, and I'm happy to answer any questions the court may have. Do we have any other questions? All right. Thank you very much. I agree with Justice Ellis. The case was well argued and well briefed. We'll take it under advisement and a decision will be issued in due course. So have a great day. We appreciated the argument.